IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CAROLINA CASUALTY INSURANCE
COMPANY,**
          **Plaintiff,**

vs.                                                                                           Civ. No. 09-1183 JCH/RHS

**NANODETEX CORPORATION,
ALAN P. SYLWESTER,** and
**ANGELO L. SALAMONE,**

                                      **Defendants,**
and

**NANODETEX CORPORATION,
ALAN P. SYLWESTER,** and
**ANGELO L. SALAMONE,**

                                      **Counterclaimants,**

vs.

**CAROLINA CASUALTY INSURANCE
COMPANY** and **MONITOR LIABILITY
MANAGERS, INC.,**

                                      **Counter-Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a *Motion for Partial Summary Judgment on Plaintiff's Claim for Declaratory Relief on the Applicability of the Malicious Prosecution Exclusion to Claims of Malicious Abuse of Process* [Doc. 40] filed November 4, 2010 by Defendants/Counterclaimants Nanodetex Corporation, Alan P. Sylwester, and Angelo L. Salamone. This matter is also before the Court on Plaintiff/Counter-Defendant Carolina Casualty Insurance Company's ("Carolina") and Counter-Defendant Monitor Liability Managers, Inc.'s

("Monitor") *Motion for Partial Summary Judgment*, filed November 23, 2010 [Doc. 44].[1]  After considering the motions, briefing, and relevant law, and being otherwise fully informed, the Court finds that Nanodetex's motion [Doc. 40] should be DENIED and that Carolina and Monitor's motion [Doc. 44] should be GRANTED.

## BACKGROUND

As relevant to the discrete question of law at issue in the parties' motions for partial summary judgment, the following material facts are undisputed.  This case has its genesis in an earlier lawsuit.  On October 15, 2005, Nanodetex Corporation ("Nanodetex") filed a First Amended Complaint in the United States District Court for the District of New Mexico against Sandia Corporation ("Sandia") and Defiant Technologies ("Defiant") and some of Defiant's principals.  Nanodetex alleged that it had obtained a license from Sandia for the exclusive right to develop, commercialize, and market certain micro and nanotechnologies and detection devices, and that Sandia committed acts intended to subvert the license and success of Nanodetex, including failing to provide certain information required by the licensing agreement.  Nanodetex further alleged that certain principals of Defiant, who were former employees of Sandia, participated in Sandia's alleged failure to fulfill its obligations to Nanodetex.  In addition, Nanodetex claimed that Defiant and its principals intentionally interfered with Nanodetex's contractual rights under the license agreement both while employed at Sandia and subsequently, when Defiant obtained a license from Sandia to exploit certain sensor technology.

On December 5, 2005, Defiant filed a counterclaim against Nanodetex and

---

[1] Although the parties did not file these two motions concurrently, they address the same question of law, and the arguments and material facts are effectively duplicated in both sets of briefing.  The Court will therefore treat both motions similarly to how it would treat cross-motions for summary judgment.

Nanodetex principals Alan Sylwester and Angelo Salamone, asserting claims for malicious abuse of process, defamation, tortious interference with prospective business relationships, prima facie tort, and civil conspiracy.  In its counterclaim, Defiant alleged that it had been negotiating with Sandia to obtain license rights for intellectual property that did not interfere with or infringe on any licenses previously granted by Sandia to Nanodetex, and that it had been negotiating with potential investors for venture capital to fund its work.  Defiant further alleged that, after Nanodetex filed its initial action against Sandia, Alan Schwartz (an agent of or investor in Nanodetex) contacted one of Defiant's principals and told him that if Defiant did not merge with Nanodetex, Nanodetex would amend its complaint against Sandia to assert claims against Defiant.  Following Defiant's refusal to merge, Nanodetex filed its amended complaint adding Defiant and its principals as defendants.  In its count for malicious abuse of process, Defiant alleged that Nanodetex brought suit against Defiant with an improper purpose to extort and coerce Defiant into either merging with Nanodetex or to preclude Defiant from being able to obtain the venture capital needed to fund its work and to obtain a license from Sandia.  Defiant alleged that Nanodetex's claims were made without a reasonable belief in the validity of the allegations of fact or law, and that Nanodetex knew or should have known that the allegations were false, and it sought punitive damages on the basis that Nanodetex's conduct was malicious, willful, reckless, wanton and/or fraudulent.

     Carolina's role in the instant suit comes as a result of its having issued a Director and Officers Liability Insurance policy and a Corporate Liability Insurance policy ("the Policy") to Nanodetex for the policy period of September 22, 2005 to September 22, 2006.  Pursuant to the Policy, Nanodetex tendered defense of the Defiant counterclaim to Carolina, which agreed, pursuant to a reservation of rights, to pay the reasonable fees of independent counsel to defend

Nanodetex and its principals. Nanodetex engaged independent counsel of its choice to defend the claims against it, and, pursuant to the agreement of the parties, Carolina paid its share of the defense costs, fees, and expenses.[2] Nanodetex and Sandia settled the claims that they had against each other. On September 5, 2007, the district court granted summary judgment to Defiant with respect to Nanodetex's claims against it. *See Nanodetex Corp. v. Sandia Corp., et al.*, No. 05cv1041, 2007 U.S. Dist. LEXIS 85962 (D.N.M. September 5, 2007). However, Defiant's counterclaims against Nanodetex for malicious prosecution and tortious interference remained, and proceeded to trial in November 2007. Although the parties engaged in settlement negotiations prior to trial, they failed to reach an agreement. On November 21, 2007, the Court entered judgment on a jury verdict against Nanodetex and its principals, awarding Defiant $1 million for malicious abuse of process, $1 in nominal damages for tortious interference, and $1 million in punitive damages, as well as attorneys' fees and costs.[3] Nanodetex appealed the verdict, but the judgment was affirmed.

Carolina contends that the judgment entered against Nanodetex and its principals is not covered under the Policy. Nanodetex asserts that the judgment against it is covered by the Policy, and that Carolina is obligated to pay the entire judgement, even to the extent that it exceeds the remaining policy limits. Carolina filed the instant suit, seeking a declaratory judgment that it has no obligation to indemnify any Defendant for the Defiant judgment because the Policy contains an exclusion for losses associated with a claim made for malicious prosecution. In the alternative, Carolina asserts that its liability for the judgment, if any, is limited by the Policy's

---

[2] Nanodetex selected separate independent counsel to pursue its affirmative claims against Sandia and Defiant; these costs were borne by Nanodetex.

[3] The jury's verdict did not specify whether it awarded the $1 million in punitive damages on the malicious abuse of process claim or the tortious interference claim.

limits on liability. Nanodetex, Mr. Sylwester, and Mr. Salamone filed counterclaims against Carolina and its adjuster, Monitor, asserting claims for: (1) breach of contract and the covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) violation of the New Mexico Unfair Practices Act; and (4) violation of the New Mexico Insurance Code. The only question at issue in the motions addressed by this Memorandum Opinion and Order is whether the provision of the Policy that excludes coverage for claims of malicious prosecution precludes coverage for the judgment entered against Nanodetex and its principals on Defiant's claim of malicious abuse of process.

The Insuring Agreements of the Policy provide, in relevant part, as follows:

**Coverage A. Directors and Officers Liability Insurance**

The Policy shall pay the Loss of:

1. each and every **Director or Officer** of the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Directors or Officers**.

2. the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act** but only to the extent that the **Insured Entity** has indemnified the **Directors or Officers** for such **Loss** as permitted by law.

**Coverage B. Corporate Liability Insurance**

This Policy shall pay the **Loss** of the **Insured Entity** arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**.

Carolina and Monitor's Motion for Partial Summary Judgment [Doc. 44] at 5 (emphasis in original).

The Policy contains an exclusion ("Exclusion D") that forms the basis for the

disagreement at the heart of the parties' motions. Exclusion D states, in relevant part, that:

> The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any insured:
> \* \* \*
> for:
> \* \* \*
> 3. invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, **malicious prosecution**, libel, slander, mental anguish, humiliation, emotional distress, oral or written publication of defamatory or disparaging material.

*Id*. (Emphasis added).

## **DISCUSSION**

When the material facts related to an insurance coverage question are undisputed and the only issue is the application of a policy, as in this case, there remains solely a question of law for the Court, and a decision on summary judgment is appropriate.[4] *See Benns v. Cont'l Cas. Co.*, 982 F.2d 461, 462 (10th Cir. 1993); *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758 (1986).

In general, insurance contracts should be construed in accordance with the same principles governing construction of other types of contracts. *See Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 764 (1997). The language in an insurance contract must be construed in accordance with the plain, ordinary meaning of its terms. *See King v. Travelers Ins. Co.*, 84 N.M. 550, 556 (1973). In other words, under New Mexico law, insurance policies are interpreted on the basis of the "objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured." *City of Santa Rosa v. Twin City Fire Ins. Co.*, 140 N.M. 434, 436 (Ct. App. 2006).

In particular, an exclusion of coverage must be clearly expressed in an insurance policy, and language purporting to exclude coverage must be narrowly construed. *Rummel*, 123 N.M.

---

[4] Although the parties have unresolved factual disputes related to other aspects of this case, these disputes do not pertain to the issue currently before the Court.

6

764; *Truck Ins. Exch. v. Gagnon*, 131 N.M. 151, 153 (Ct. App. 2001).  An insurance company has the burden of drafting a policy that clearly and unambiguously excludes coverage, and if an insurer issues an ambiguous policy, those ambiguities must be construed against the insurer and read in favor of coverage.  *Phoenix Indemnity Ins. Co. v. Pulis*, 129 N.M. 395, 403 (2000).  Indeed, "if the insurer urges an exclusion to coverage that the policy does not clearly express, 'the courts will not write an exception into it by construction, for the purpose of exempting the insurer from liability.'"  *Rummel*, 123 N.M. at 764 (quoting 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d*, § 22:30 (1996)).  However, this is not to say that an ambiguous exclusion automatically results in coverage.  Instead, in the case of an ambiguous exclusion, courts must "adopt the interpretation that is most in accord with reason and the probable expectation of the parties," such that "it is more accurate to state that ambiguous terms will 'be given the strongest interpretation against the insurer which they will reasonably bear.'"  *Id.* at 759 (quoting *2 Couch on Insurance 3d* at § 22:14).

The determination of whether an insurance policy is ambiguous is a question of law for the Court.  *See Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 711 (1992).  A clause in a policy is ambiguous if it "is 'reasonably and fairly susceptible of different [interpretations].'"  *Martinez v. Allstate Ins. Co.*, 124 N.M. 36, 38 (Ct. App. 1997) (citations omitted).  When "determining the existence of an ambiguity, the language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accord with the usual and natural meaning of the words, and in light of existing circumstances, prior to and contemporaneously with the making of the policy."  *Rummel*, 123 N.M. at 758 (quoting *2 Couch on Insurance 3d* at § 21:14).

Based on this standard, both sides contend that the language of Exclusion D is unambiguous, with Nanodetex arguing that it clearly fails to exclude coverage for malicious abuse of process because that tort is never mentioned in the Policy, and Carolina arguing that it clearly excludes coverage because malicious abuse of process is functionally equivalent to malicious prosecution.  Nanodetex notes that the Policy does not define the term "malicious prosecution," so that there would be no reason for an insured to believe the exclusion exists to cover anything wider than that specific tort, especially in light of the canon of interpretation that exclusions of coverage must be clearly and unambiguously expressed in a policy.  Nanodetex also argues that, while malicious prosecution and malicious abuse of process are torts that arise from similar backdrops, they are separate and distinct causes of action with different elements of proof.  The tort of malicious prosecution requires "(1) the institution of civil proceedings by the defendant; (2) malice; (3) a lack of probable cause; (4) termination of such proceedings in [the] plaintiff's favor; and (5) damages." *Devaney v. Thriftway Mktg. Corp.*, 124 N.M. 512, 517 (1997).  In contrast, the tort of malicious abuse of process requires: "(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages." *Id*. at 518.[5]

---

[5] In *Durham v. Guest*, 145 N.M. 694, 700 (2009), the New Mexico Supreme Court overruled *Devaney* with respect to its requirement that the defendant have initiated a judicial proceeding against the plaintiff.  *Durham* is not relevant to the Court's analysis because it was decided after the events giving rise to this case.  What is at issue is the reasonableness of Nanodetex's expectation of coverage under the Policy given the law as it existed at the time Carolina issued the Policy.  In addition, Nanodetex had unquestionably initiated a judicial proceeding against Defiant in the underlying case, so that elimination of that requirement as an element does not change the analysis.

Carolina argues that there is no meaningful distinction between malicious prosecution and malicious abuse of process, so that a reasonable insured should expect an exclusion for malicious prosecution claims to also apply to a claim for malicious abuse of process.  The *Devaney* court observed that, over time, the separate torts of malicious prosecution and abuse of process grew steadily less distinguishable, with "confusion between these two separate torts aris[ing] from a commonality in their purpose and their elements." *Id*. at 517.  The court reasoned that both malicious prosecution and abuse of process are "designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was brought by a defendant merely for the purpose of vexing or injuring the plaintiff," and that the "requirements of improper purpose for abuse of process and malice for malicious prosecution are substantially similar...[because] [t]he institution of proceedings without probable cause, an element of malicious prosecution, can be characterized as an act not proper in the regular course of proceedings, an element of abuse of process." *Id*. at 517-18.  Thus, the *Devaney* court held that there was "no longer a principled reason for characterizing" malicious prosecution and abuse of process as separate causes of action, and it designated "malicious abuse of process" as a single combined cause of action involving "a misuse of the power of the judiciary by a litigant...[with] a malicious motive." *Id*.

The Court holds that Exception D, denying coverage for claims of malicious prosecution, is "reasonably and fairly susceptible of different [interpretations]," *Martinez*, 124 N.M. at 38, and is therefore ambiguous.  While the clause does not explicitly exclude coverage for malicious abuse of process claims, New Mexico law recognizes no meaningful distinction between malicious prosecution and abuse of process, and has merged malicious prosecution into the tort of malicious abuse of process to cover all actions "wrongfully brought...for the purpose of vexing or

injuring the plaintiff." *Devaney*, 124 N.M. at 517.

As Nanodetex noted in its Motion for Partial Summary Judgment [Doc. 40 at 11], exclusionary clauses that include the undefined term "malicious prosecution" have been determined by other courts to be ambiguous as a matter of law when applied to claims other than malicious prosecution.[6] *See Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994) (the term "malicious prosecution" is ambiguous as a matter of law because it is undefined in the policy and because a "layperson could believe reasonably that the words 'malicious prosecution' only required a lawsuit or other legal proceeding to be brought maliciously or spitefully for an improper purpose"); *Martin's Herend Imports, Inc. v. Twin City Fire Ins. Co.*, 2000 U.S. Dist. LEXIS 8690 at *19-20 (S.D. Tex. Mar. 31, 2000) (the undefined term "malicious prosecution" is ambiguous and must be construed to cover the distinct but closely related tort of abuse of process); *Toll Bros., Inc. v. Gen. Accident Ins. Co.*, 1999 Del. Super. LEXIS 313 at *28-29 (Del. Super. Ct. Aug. 4, 1999) (viewed through the eyes of a layperson, the term "malicious prosecution" would cover actions deriving from abuse of process, because the two torts are so intertwined that the distinction is difficult even for attorneys).

When a provision of an insurance policy is ambiguous, the Court's construction of the provision will be guided by its interpretation of the reasonable expectations of the insured. *See Rummel*, 123 N.M. at 759; *Bird v. State Farm Mut. Auto. Ins. Co.*, 142 N.M. 346, 350 (Ct. App. 2007). The reasonable expectations of an insured must be determined by looking at whether a

---

[6] The three cases cited herein involve the situation opposite to that found in this case: instead of excluding coverage, the insurance policies in these cases provide coverage for claims of malicious prosecution, but do not explicitly provide coverage for claims of abuse of process. The insureds in these cases seek to expand coverage, while the insurance companies argue that coverage should be strictly limited to claims of malicious prosecution. Nonetheless, the analyses and conclusions that the term "malicious prosecution" is ambiguous are still applicable to the question before the Court, despite the difference in context.

reasonably intelligent layman, rather than an attorney or a person trained in the insurance field, would understand the full import of the provision.  *See Rummel*, 123 N.M. at 758; *Read v. Western Farm Bureau Mut. Ins. Co.*, 90 N.M. 369, 374 (Ct. App. 1977).  Although ambiguities should generally be resolved against the insurer, as the party that drafted the language, the Court must "adopt the interpretation that is most in accord with reason and the probable expectations of the parties."  *Id*.

Nanodetex contends that "[i]t strains credulity that a layman, untrained in the law, would grasp the intricacies of [Carolina's] argument" that the bases of claims for malicious prosecution and malicious abuse of process are so substantially similar as to create the expectation of exclusion of coverage for both types of claims because "[a] reasonable insured cannot [] reasonably be expected to understand such legal niceties."  Defendants' Reply to Motion for Partial Summary Judgment [Doc. 50] at 7.  In fact, however, it is the interpretation that Nanodetex urges, that claims for malicious prosecution and malicious abuse of process are sufficiently different from each other that a layman would expect coverage for one even when the other is excluded, that relies on intricacies that are beyond what a layman would be expected to grasp.  As the *Devaney* court observed, even "[m]any courts and litigants" have "experienced a great deal of difficulty in distinguishing" a claim of malicious prosecution from one of abuse of process.  124 N.M. at 517.  Indeed, the *Toll Brothers* court noted that "[a]lthough this distinction [between malicious prosecution and abuse of process] is interesting in a scholarly and historical context, it does not seem to matter much to life in the real world," so that "[i]n reality, the legal nuances of these torts are most likely lost not only on the lay person, but on all but the historically sophisticated legal scholar."  1999 Del. Super. LEXIS 313 at *19-20.

Malicious prosecution and abuse of process both involve "a misuse of the power of the

judiciary by a litigant...[with] a malicious motive," and were combined into one cause of action because there was no longer a principled reason for characterizing them as separate claims. *Devaney*, 124 N.M. at 518. Excluding coverage for a claim of malicious prosecution while mandating coverage for the virtually indistinguishable claim of malicious abuse of process would require the type of hyper-technical reading in which a layman is unlikely to engage, and would elevate form over substance. Thus, the Court finds that the most reasonable interpretation of Exclusion D, and the one most likely in line with the expectations of the parties, is that the undefined term "malicious prosecution" includes claims brought for malicious abuse of process, and that such claims are therefore excluded from coverage.

Further convincing the Court is the fact that, at the time Carolina issued the Policy, "malicious prosecution" had not existed as a tort in New Mexico for almost eight years. Therefore, adopting Nanodetex's strict interpretation would render this portion of Exclusion D a nullity. In construing an insurance contract, "consideration, force, and effect must, if possible, be given to all parts thereof," and policy language should not be disregarded as mere surplusage. *Mut. Life Ins. Co. of N.Y. v. Weigel*, 197 F.2d 656, 658-59 (10th Cir. 1952). *See also Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 769 (10th Cir. 2004) (noting "the general proposition that courts should avoid construing a document in such a way as to render some of the language surplusage"). Only by reading the undefined term "malicious prosecution" to encompass claims of malicious abuse of process, which is essentially the new name given to claims of malicious prosecution, does this exclusion have any meaning.

Moreover, the evidence presented at the trial on the underlying suit demonstrates that Nanodetex's adding of Defiant as a defendant could have just as easily met the elements of a claim of malicious prosecution, if such a tort had still existed in New Mexico at that time. While

an insurer's duty to defend "arises out of the nature of the allegations in the complaint filed against the insured," *Servants of the Paraclete v. Great Am. Ins. Co.*, 857 F. Supp. 822, 829 (D.N.M. 1994), the duty to indemnify arises not from the label given to a particular claim, but by the facts as they are established at trial. *See Freightquote.Com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 895 (10th Cir. 2005).

As discussed previously, before the tort of malicious prosecution became encompassed in the tort of malicious abuse of process, its elements were: (1) the institution of civil proceedings by the defendant; (2) malice; (3) lack of probable cause for the civil proceedings; (4) termination of such proceedings in the plaintiff's favor; and (5) damages. *Devaney*, 124 N.M. at 517. Clearly, the first element of a malicious prosecution claim was met, because Nanodetex initiated proceedings against Defiant in the underlying action. Regarding malice, the *Devaney* court held that the malice requirement is satisfied when a lawsuit's purpose is "repugnant to the remedy provided by law, a perversion of the legal system such as extortion...." *Id*. at 528. In affirming the judgment against Nanodetex, the Tenth Circuit held that, viewing the facts in the light most favorable to the jury's verdict, Nanodetex's actions reflect an "extortive" use of the legal process, "an illicit use of process not for its intended purpose, but as a means to secure an ulterior end." *Nanodetex Corp. v. Defiant Techs.*, 349 Fed. Appx. 312, 319 (10th Cir. 2009). Thus, the Tenth Circuit found the element of malice in Nanodetex's actions. With respect to lack of probable cause, Defiant alleged that "[t]he actions of Nanodetex, Sylwester and Salamone in filing the claims against Defiant were taken without any reasonable belief in the validity of the allegations of fact or law underlying the claims against Defiant" and that "Nanodetex, Sylwester and Salamone knew or should have known that the allegations made against Defiant...were false," and Defiant proceeded before the jury on this contention. *See* Defiant's Counterclaim, attached as Ex.

C to Doc. 1, at 24 ¶¶ 27-28; *Nanodetex Corp. v. Defiant Techs.*, 349 Fed. Appx. at 317.  Because the jury returned a general rather than a special verdict, it is not completely clear whether the jury adopted the argument that Nanodetex filed its claim without probable cause.  However, Nanodetex's lawsuit was dismissed on summary judgment, and the Tenth Circuit found that "Nanodetex did not take care with the allegations in its complaint, alleging that Defiant had entered into an agreement with Sandia concerning the commercial exploitation of MicroChemLab technology when it had not."  *Id*. at 319.  Finally, the Tenth Circuit found that Defiant demonstrated that it had been damaged.  *See id*. at 319-322.  Thus, at trial, Defiant came forward with evidence also demonstrating the elements of a claim of malicious prosecution, if such a tort had existed at the time, even though its claim was labeled as one for malicious abuse of process.  Therefore, even under a very narrow reading of Exclusion D, Carolina is not obligated to indemnify Nanodetex for the judgment on Defiant's malicious abuse of process claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Partial Summary Judgment on Plaintiff's Claim for Declaratory Relief on the Applicability of the Malicious Prosecution Exclusion to Claims of Malicious Abuse of Process* [Doc. 40] is DENIED and Plaintiff's *Motion for Partial Summary Judgment* [Doc. 44] is GRANTED.

UNITED STATES DISTRICT JUDGE