# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CAROLINA CASUALTY INSURANCE COMPANY,**

                                 **Plaintiff,**

**vs.**                                                     **Civ. No. 09-1183 JCH/RHS**

**NANODETEX CORPORATION,**
**ALAN P. SYLWESTER,** and
**ANGELO L. SALAMONE,**

                                 **Defendants,**
**and**

**NANODETEX CORPORATION,**
**ALAN P. SYLWESTER,** and
**ANGELO L. SALAMONE,**

                               **Counterclaimants,**

**vs.**

**CAROLINA CASUALTY INSURANCE COMPANY** and **MONITOR LIABILITY MANAGERS, INC.,**

                                 **Counter-Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Carolina Casualty Insurance Company's and Counter-Defendant Monitor Liability Managers, Inc.'s (collectively, "Carolina's") *Amended Motion for Summary Judgment on Count II of the Complaint and on Nanodetex's Counterclaims* (Doc.185).  In an action for declaratory relief, the movants – an insurance company and its underwriting manager – contend that they are entitled to a summary judgment limiting their liability on a multimillion-dollar damages award obtained against their policyholder, Defendant

Nanodetex Corporation ("NDX").  Carolina also moves for summary judgment on all of Defendants NDX's, Alan P. Sylwester's, and Angelo L. Salamone's counterclaims.  Also pending before the Court is NDX's *Opposed Motion to Strike Supplemental Expert Report of Plaintiff/Counter-Defendants' Expert Steven Platt.*  (Doc. 178).  After considering the motions, briefs, exhibits, and the relevant law, and being otherwise fully informed, the Court finds that Carolina's motion for summary judgment should be granted.  Accordingly, NDX's motion to strike will be denied as moot.

## FACTUAL BACKGROUND

### NDX Files the Defiant Action

This case has its genesis in an earlier lawsuit.[1]  On October 15, 2005, NDX filed a First Amended Complaint in the United States District Court for the District of New Mexico against Sandia Corporation ("Sandia"), Defiant Technologies ("Defiant"), and some of Defiant's principals.  NDX alleged that it had obtained a license from Sandia for the exclusive right to develop, commercialize, and market certain micro and nanotechnologies and detection devices, and that Sandia committed acts intended to subvert the license and NDX's success.  NDX further alleged that certain principals of Defiant participated in Sandia's alleged failure to fulfill its obligations to NDX, and that Defiant and these principals intentionally interfered with NDX's contractual rights under the license agreement with Sandia.

On December 5, 2005, Defiant responded to the Complaint by asserting counterclaims

---

[1]A more detailed account of the underlying suit between NDX and Defiant was previously set forth in the Court's July 27, 2011 Memorandum Opinion and Order, which granted Carolina partial summary judgment on Count I of the Amended Complaint.  (Doc. 154).

against NDX and its principals Alan Sylwester and Angelo Salamone for (1) malicious abuse of process, (2) defamation, (3) tortious interference with prospective business relationships, (4) prima facie tort, and (5) civil conspiracy.  Defiant's countersuit alleged that it had been negotiating with Sandia to obtain license rights for intellectual property that did not interfere with or infringe on any licenses previously granted by Sandia to NDX, and that it had only been added as a defendant after declining NDX's offer to merge with NDX.  Defiant sought both compensatory damages and punitive damages on the basis that NDX's conduct was malicious, willful, reckless, wanton and/or fraudulent.

**<u>Carolina's Role in the Defiant Action</u>**

Prior to bringing suit against Sandia and Defiant, NDX obtained insurance coverage from Carolina for the policy period of September 22, 2005 to September 22, 2006 ("Management Liability Insurance Policy No. 6668662/1," or "the Carolina Policy").   The Carolina Policy provided for $1,000,000 in coverage, subject to reduction for Carolina's payment of the "reasonable and necessary fees, costs and expenses . . .  resulting solely from the investigation, adjustment, defense and appeal" of a claim against NDX.  (Doc. 188 Ex. 2 at § III.C).

The Carolina Policy further provided, in relevant part:

**Coverage A. Directors and Officers Liability Insurance**

The Policy shall pay the Loss of:

1.   each and every **Director or Officer** of the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Directors or Officers**.

2.   the **Insured Entity** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act** but only to the

3

extent that the **Insured Entity** has indemnified the **Directors or Officers** for such **Loss** as permitted by law.

**Coverage B. Corporate Liability Insurance**

This Policy shall pay the **Loss** of the **Insured Entity** arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** or the Extended Reporting Period (if applicable) for any **Wrongful Act**.

(Doc. 44 at 5) (emphasis in the original).

The Carolina Policy further contained an exclusion ("Exclusion D") which provided that Carolina "shall **not** be liable to make any payment for **Loss** in connection with a **Claim** made against any insured" for several categories of claims, including malicious prosecution. *Id.*

Pursuant to the Carolina Policy, NDX requested that Carolina – via its underwriting manager, Monitor – defend NDX against Defiant's counterclaims. Carolina agreed, pursuant to a reservation of rights, to pay the reasonable fees of independent counsel to defend NDX and its principals. Carolina's reservation of rights letter specifically noted that two of Defiant's counterclaims – for malicious abuse of process and defamation – "are excluded from coverage pursuant to Exclusion D of the Policy." (Doc. 188 Ex. 1 at 3).

The parties dispute whether NDX's counsel in the Defiant action was, in fact, "independent." While NDX admits that it engaged the independent counsel of its choice to defend the claims against it, and that Carolina paid its share of the defense costs, fees, and expenses,[2] it also maintains that "Carolina retained control over the defense of those claims and over the decision of whether to settle those claims," (Doc. 188 at 3), which Carolina denies.

---

[2] NDX selected separate independent counsel to pursue its affirmative claims against Sandia and Defiant; these costs were solely borne by NDX.

4

**NDX's Suit Against Defiant is Dismissed; Settlement Discussions on Defiant's Counterclaims Fail**

On September 5, 2007, the district court granted summary judgment to Defiant with respect to NDX's claims against it.  *See Nanodetex Corp. v. Sandia Corp., et al.*, No. 05cv1041, 2007 U.S. Dist. LEXIS 85962 (D.N.M. September 5, 2007).  However, Defiant's counterclaims against NDX remained.

Trial of NDX's suit against Sandia and Defiant's counterclaims against NDX commenced in early November 2007.  After the first day of trial, NDX and Sandia settled their claims against each other, leaving only Defiant's counterclaims in suit.

Over the second day and third morning of trial, November 7 - November 8, 2007, NDX and Defiant engaged in settlement discussions.  On the evening of November 7, 2007, NDX attorney Kenneth Dort (who was not serving as NDX's independent counsel in the Defiant suit) sent Carolina's claim adjuster an e-mail demanding that Carolina settle the action in light of NDX principal Sylwester's performance on the witness stand that day.  However, the parties failed to settle before the close of evidence the following day.

On November 8, 2007, after the close of evidence but before closing arguments, the court dismissed all but two of Defiant's counterclaims – for malicious abuse of process and tortious interference with business relationships.

**Defiant Prevails on Malicious Abuse of Process and Tortious Interference Counterclaims**

On November 21, 2007, the court entered judgment on a jury verdict against NDX and its principals, which awarded Defiant $1 million for malicious abuse of process, $1 in nominal damages for tortious interference, $1 million in punitive damages, and attorneys' fees and costs. The jury's verdict did not specify whether it awarded the $1 million in punitive damages on the

malicious abuse of process claim or the tortious interference claim.  NDX appealed the verdict, but the judgment was affirmed.

**Carolina Brings the Instant Action for Declaratory Judgment; NDX Brings Counterclaims**

On December 18, 2009, Carolina filed the instant action, which sought a declaration in Count I that Exclusion D of the Carolina Policy (which specifically excluded from NDX's insurance coverage losses associated with a claim for malicious prosecution) limited Carolina's liability for any portion of the Defiant judgment other than the $1 nominal award for tortious interference.  In the alternative, at Count II, Carolina asserted that its liability for the Defiant judgment, if any, is limited to the remainder (after costs and attorneys' fees are reduced) of Carolina's $1,000,000 policy limit.  In its Answer, NDX asserted that the Defiant judgment is covered by the Carolina Policy, and that Carolina is obligated to pay the entire judgment, even to the extent that it exceeds the remaining policy limits.  NDX, Mr. Sylwester, and Mr. Salamone further filed counterclaims against Carolina and Monitor for: (1) breach of contract and the covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) violation of the New Mexico Unfair Practices Act; and (4) violation of the New Mexico Insurance Code.[3]

In November 2010, the parties filed cross-motions for partial summary judgment on whether the Carolina Policy's exclusion of coverage for malicious prosecution claims similarly

---

[3]NDX also initially claimed damages for (1) its being held liable for a judgment in excess of the Carolina Policy limit; (2) loss of use of corporate funds deposited during the appeal for collateralization of the appeal bond paid for by Carolina; (3) deferred salaries of Sylwester and Salamone; (4) loss of $10 million in business opportunities; (5) Sylwester's loss salary from a potential position of CEO of Power Air Corporation; and (6) exposure to a shareholder lawsuit. NDX subsequently withdrew claims (4)-(6).  On August 5, 2011, the Court ruled that the deferred salaries of Sylwester and Salamone are not available as an element of damages.  (Doc. 157).  Because the Court finds that Carolina is entitled to summary judgment on the merits of NDX's counterclaims, it need not reach the issue of NDX's alleged damages.

excluded coverage for malicious abuse of process – a claim that resulted in a $1 million compensatory damages award to Defiant.  On July 27, 2011, the Court issued a Memorandum Opinion and Order finding that Carolina Casualty has no obligation to indemnify NDX for the $1 million judgment on Defiant's malicious abuse of process claim.


## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual

record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## DISCUSSION

Carolina contends that it is entitled to summary judgment on all of the remaining claims in issue. Specifically, these are: (1) Carolina's Count II, which seeks a declaratory judgment that its liability is limited to the remaining limits of the Carolina Policy, because those portions of the judgment that exceeded policy limits were excluded from coverage; and (2) NDX's various counterclaims, which Carolina argues are all based on the dubious legal theory that Carolina acted in bad faith in refusing to settle a claim that it was not legally obligated to indemnify. The parties agree that New Mexico law governs this dispute.

## I. Carolina's Count II for "Limit of Liability"

As noted above, Defiant obtained a total recovery of $1 million in compensatory damages for malicious abuse of process, $1 in nominal damages for tortious interference with business relationships, and $1 million in unspecified punitive damages. The Defiant judgment exceeds the limits of the Carolina Policy, which obligates Carolina to indemnify NDX's losses up to $1 million per covered claim, subject to a $25,000 deductible. Carolina's Count II contends that because the only portion of the judgment that is traceable to a covered claim is the nominal damages, Carolina's payment of NDX's defense costs has already served to exhaust the applicable limits of liability. NDX responds that it is entitled to reimbursement for the entire excess judgment, regardless of the extent of its insurance coverage, because the excess judgment

8

is tantamount to consequential damages flowing from Carolina's bad faith in refusing to settle Defiant's third-party claim.  Because there is no dispute that the tortious interference claim was covered, and thus, that nominal damages should be indemnified, the Court must determine whether a genuine issue of material fact exists as to whether Carolina is liable for the remaining portions of the judgment.

**A.     Carolina's Purported Liability on the Non-covered Malicious Abuse of Process Claim**

In light of the Court's earlier finding that Carolina is not obligated to indemnify NDX for Defiant's malicious abuse of process claim, Carolina argues that it is "a foregone conclusion" that NDX may not claim Defiant's compensatory damages, which were awarded solely on that claim.  (Doc. 185 at 9).  NDX responds that the Court's ruling "was based on Carolina's contractual duties," and does not bar a further ruling that Carolina is nonetheless liable for malicious abuse of process damages under "the principles applicable to . . . bad faith failure to settle claims."  (Doc. 188 at 16-17).

NDX cites several cases in support of its argument that, under the law of New Mexico, an insurer may be obliged to indemnify a non-covered claim under a theory of tort.  First, NDX claims that *Lujan v. Gonzales*, 84 N.M. 229 (Ct. App. 1972), and *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576 (10th Cir. 1998) stand for the proposition that, in NDX's words, "[w]hen an insurer breaches the covenant of good faith and fair dealing, New Mexico common law holds an insurer liable for all consequential damages flowing therefrom, even if those damages are not covered by the insurance policy at issue."  (Doc. 188 at 17).  Similarly, NDX contends that *Dairyland Ins. Co. v. Hermann*, 124 N.M. 624, 629 (1997), *Foundation Reserve Ins. Co. v. Kelly,* 388 F.2d 528, 531 (10th Cir. 19868), and *DeWitt v. Monterrey Ins. Co.*, 2012 Cal. App.

9

LEXIS 283 (Cal. Ct. App., Mar. 13, 2012) all hold that an insurer's bad-faith failure to settle third party claims results in its liability "for all consequential damages . . . regardless of policy limitations." *Id.* at 20. Contrary to NDX's representations, however, none of the cases it cites involved an insurer's liability for its failure to settle a *non-covered* claim. *See Lujan*, 84 N.M at 232-33 (policyholder's son was covered by claim that insurer allegedly refused to settle in bad faith); *City of Hobbs*, 162 F.3d at 583-84 (action for failure to settle remanded for further proceedings where policy specifically covered all "claims arising under New Mexico law" and "claims arising under law other than that of New Mexico"); *Dairyland*, 124 N.M. at 627 (triable issue of fact existed as to whether insurer's rejection of offer to settle covered claims within policy limits was in bad faith); *Foundation Reserve*, 388 F.3d at 530 (insurer's argument that it was "not guilty of bad faith in refusing to settle because it was justified in contending that there was no coverage" was rejected, as claim was covered); *DeWitt,* 204 Cal. App. at 707 (an "insurer's duty to indemnify applies only to claims that are covered by the policy . . . failure of a liability insurer to perform its implied duty to accept a reasonable settlement offer of a covered claim" gives rise to a bad faith claim).

Contrary to NDX's representations, New Mexico law directs that an insurer's obligation "is a question of contract law [that] will be determined by reference to the terms of the insurance policy." *Knowles v. United Services Automobile Assoc.*, 114 N.M. 703, 705 (1992). The Court is unaware of any case, in or out of New Mexico, that has held that an insurer may be liable under tort principles on an excess judgment for which it does not owe coverage. *See Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516-17 (Colo. 1996) (the tort duty imposed upon an insurer "must be within the scope of the obligations imposed by the contract . . . if the insurer has no contractual duty to indemnify the insured for [non-covered] damages, the insurer has no tort duty

10

to settle in good faith with regard to [those] damages.").

Indeed, when a suit that contains both covered and non-covered claims fails to settle and ultimately results in a judgment in excess of policy limits, courts have consistently found that the insurer is, at most, liable only for the portion of the excess judgment that was covered by its policy.  In *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.,* 193 F.3d 340 (5th Cir. 1999), the Fifth Circuit considered an insurance company's declaratory action for a determination that it was not liable for non-covered punitive damages, which were awarded along with covered actual damages in a suit against its insured.  The court rejected the insured's counterclaim that the insurance company breached its duty to exercise ordinary care in defending and settling the lawsuit, which was premised on the argument that a "duty to settle within policy limits was triggered" when the insurance company became aware that its insured would have contributed toward a settlement "to avoid exposure to a large award of [non-covered] punitive damages."  *Id.* at 342.  Taking as its starting point "the proposition that an insurer has no duty to settle a claim that is not covered under its policy," the Fifth Circuit reasoned that such "language indicates that [the insurance company] had no duty to take into consideration [the insured's] potential exposure to punitive damages during settlement negotiations regarding covered claims."  *Id.* at 343 (quotation omitted).  The court concluded that the legal principle that insurers are liable "for damages on covered claims above policy limits" was intended "to ensure that insurers accept reasonable settlement offers," but that requiring an insurer to settle within policy limits to avoid exposing its insured to non-covered damages "would, in effect, extend the actual coverage of the insurance contract" and "ignore the most basic proposition that an insurer has no duty to settle a non-covered claim."  *Id.*

The Fifth Circuit's reasoning in *St. Paul* has been echoed by numerous other courts

considering an insurer's obligations in defending actions combing covered and non-covered claims. *See Lira,* 913 P.2d at 516-17 (Colo. 1996); *Ross Neely Sys. Inc. v. Occidental Fire & Cas. Co., 196 F.3d 1347, 1352* (11th Cir. 1999) (insurer is not "under a duty to settle a compensatory damage award merely to minimize its insured's exposure to [non-covered] punitive damages"); *Camelot by the Bay Condo. Owners' Assn. v. Scottsdale Ins. Co.,* 27 Cal. App. 4th 33, 52 (1994) (an "insurer does not . . .  insure the entire range of an insured's well-being, outside the scope of and unrelated to the insurance policy, with respect to paying third party claims. It is an insurer, not a guardian angel") (reversing trial court judgment that insurer breached duty to settle suit combining covered and non-covered claims); *Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.*, 724 F.2d 1343, 1346 (9th Cir. 1983).

The Tenth Circuit has acknowledged that an insurer that undertakes to defend a lawsuit that would potentially expose its insured to both covered and non-covered damages has the duty to act "in good faith toward its insured as to the entire undertaking." *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1506 (10th Cir. 1994).  Importantly, however, that "duty of good faith does not include settlement" of the non-covered claim.  *Id.*  In *Magnum*, after an insurer failed to settle a suit against its insured within policy limits, the plaintiff obtained a judgment for which compensatory damages were covered and punitive damages were not.  The insured subsequently sued the insurer for allegedly breaching its duty to act in good faith in handling the case, and ultimately obtained a judgment in its favor.  On appeal, the Tenth Circuit reversed the judgment on the ground that the insured's bad faith damages were improperly based on the amount it had been obligated to pay in non-covered damages following the original suit. While the court noted that "the mere presence of a [non-covered] claim . . .  does not abrogate an insurer's obligation to act in good faith towards its insured," it concluded that the "conduct good

12

faith requires of an insurer in these circumstances differs from the conduct" required where the insurer's failure to settle results in excess liability on an otherwise wholly-covered suit:

> We hold that here, where both compensatory and uninsurable punitive damages are sought, and [the insurer] assumed the defense of the entire suit under the obligations of the policies, the presence of the punitive claim did not absolve [the insurer] from its obligation of good faith in handling the entire case.  That duty of good faith does not include settlement or a contribution to settlement by [the insurer] of the uninsurable punitive claim.

*Id.* at 1506.  Thus, because the trial court erred in allowing the jury to consider the non-covered punitive damages in determining the compensatory award on the bad faith claim, the Tenth Circuit remanded the case for a new trial.  *Id.*

Here, NDX asks the Court to preserve the possibility of the very outcome – a bad-faith damages award based on non-covered damages – that the Tenth Circuit explicitly rejected in *Magnum.*  Accordingly, the Court finds that Carolina is not liable for the $1 million in compensatory damages awarded to Defiant on its non-covered malicious abuse of process claim.  Thus, to the extent NDX can establish a triable issue with respect to any of its counterclaims, it is not entitled to a damages award based on these non-covered damages.

**B.      $1 Million in Punitive Damages**

Carolina next argues that it is under no obligation to indemnify NDX for Defiant's punitive damages, because there is no material dispute that these damages were also awarded for the non-covered malicious abuse of process claim.  The Court agrees.  The verdict form in the Defiant litigation did not require the jury to specify whether it was awarding punitive damages for malicious abuse of process or Defiant's other claim (for tortious interference with business relationships, which was covered by the Carolina Policy).  However, Carolina proffers evidence that Defiant's counsel conceded during closing arguments that his client was not entitled to even

13

compensatory damages on the covered claim, let alone punitive damages:

> [W]hile Defiant certainly claims it was damaged as a result of Nanodetex's action in interfering with its contractual relationship, you can't really say that it's been damaged.
>
> And I'm not going to try to be greedy here.  I'm going to tell you what Defiant thinks is the right thing to do.  And honestly, with regard to do you find by a preponderance of the evidence that Defiant suffered monetary losses?  We haven't proven anything to you.  Answer that no.

(Doc. 185 Ex. 1 Tr. at 139:7-139:16).  Defiant's counsel was explicit, however, in linking its request for punitive damages to its malicious abuse of process claim.  *See id.,* Tr. at 138:10-138:14, 140:15-140:16 (Defiant's counsel asking the jury to award punitive damages of "two times the 1.8 million" Defiant was seeking in compensatory damages for malicious abuse of process).

Further, Carolina presents evidence that NDX treated the punitive damages as having been awarded on the non-covered malicious abuse of process claim in arguing its appeal to the Tenth Circuit.  (Doc. 185 at 12).  While NDX's appellate brief in the Defiant action is not in the record, NDX does not disagree with Carolina's characterization.

NDX's response does not attempt to show that there is a genuine factual dispute over the possibility that any part of the punitive damages were covered by the Carolina Policy.  *See Leafland Group-II, Montgomery Towers Ltd. Partnership v. Ins. Co. of Am.*, 118 N.M. 281, 284 (1994) ("while insurance policies may in some circumstances be construed against the insurer, the insured must still show that its claim falls within the coverage provided by the policy."); *Rivelli v. Twin City Fire Ins. Co.*, 359 Fed. Appx. 1,7 (10th Cir. 2009) ("in coverage disputes, the insured has the burden of proving that an asserted claim comes within the coverage of the policy").  Rather, NDX maintains that because punitive damages were awarded "as a proximate

result of Carolina's bad faith failure to settle" the lawsuit with Defiant, Carolina is liable for

them "irrespective of whether NDX's policy provided coverage for all claims for which damages

were awarded, or whether NDX can show that all or part of the judgment was allocated to claims

covered under its policy." (Doc. 188 at 20). For the reasons set forth above, the Court finds that

NDX cannot maintain a claim that Carolina's tort duty to settle in good faith exceeded the scope

of its contractual obligations.

Accordingly, the Court finds that Carolina is not liable for the $1 million in punitive

damages awarded to Defiant on its non-covered malicious abuse of process claim.   Thus, to the

extent NDX can establish a triable issue with respect to any of its counterclaims, it is not entitled

to a damages award based on these non-covered damages.


## II. <u>NDX's Counterclaims</u>

Carolina argues that there is no genuine issue for trial as to any of NDX's counterclaims,

because they are all founded on the same untenable premise as NDX's defense to Carolina's

Count II – that Carolina exercised bad faith in failing to settle a non-covered claim.  Carolina

further contends that NDX cannot show any damages in this case, because the only covered

claim in the underlying suit resulted in an award of nominal damages.

NDX agrees that "all of NDX's claims arise from Carolina's alleged bad faith failure to

settle claims made against NDX by Defiant." (Doc. 188 at 10).  NDX does, however, contend

that even if its bad faith theory fails, it is entitled to its "consequential damages [,] [which]

include the excess judgment entered against it" under its counterclaims for breach of contract

and violation of the New Mexico Insurance Code.  (Doc. 188 at 23).

As more fully set forth above, the Court rejects NDX's argument that an insurer's duty to

15

exercise good faith in defending its insured in a lawsuit includes a duty to obtain a settlement of any non-covered claims.  *See supra* at 12-13; *see also Magnum,* 36 F.3d at 1506.  While the Tenth Circuit ordered a new trial on an insured's bad faith claim in *Magnum* even after finding that the insurer had no duty to settle non-covered damages, it did so because the insured had set forth specific evidence of bad faith with respect to the insurer's handling of the case as a whole -- not merely its failure to reach a settlement – as required to establish its claim for breach of good faith under the common law of Oklahoma.  *See id.* (court agreeing with the insured that Oklahoma law does not "insulate[] an insurer from a claim of bad faith in handling the entire case whenever a claim is made for uninsurable punitive damages").  The insured's proffered evidence included the facts that

> As the case moved closer to trial, the evidence available to [the insurer] indicated that the case was more dangerous than it had initially appeared, but [the insurer] failed to take these developments into account. For example, several potential defenses "fell by the wayside" and the victim turned out to make a very good witness.  The senior claims analyst who evaluated the plaintiffs' claim to determine what amount to offer at the court-ordered mediation only received the file the day before, which gave her a short time in which to make her evaluation. At the mediation, the plaintiffs lowered their settlement demand to $ 495,000, but [the insurer] never offered more than $ 350,000, despite the recommendation of the attorney hired to defend [the insured] that [the insurer] settle for as much as $495,000.  In the days before trial, plaintiff's counsel expressed a willingness to return to mediation, but [the insurer] refused.
>
> When plaintiff's counsel reminded [the insurer's claims adjuster] of the potential for punitive damages, [the adjuster] said that he did not believe that the plaintiffs would get punitive damages, but if they did, "that was [the insured's] problem."

*Id.* at 1507.  The court thus concluded "that the evidence as a whole supported a reasonable inference" that the insurer failed to meet its good faith obligations under the governing law of Oklahoma "to give fair consideration to [its insured's] position" and to cooperate with its insured "in attempting to settle the entire case."  *Id.*

16

Thus, in order for NDX to withstand summary judgment on its counterclaims, it must 1) set forth how its theory of bad faith fits within the framework of each of its statutory claims, and 2) point to specific evidence in the record of Carolina's bad faith in handling the Defiant litigation – beyond the mere fact that the case failed to settle – and explain how it supports each of its counterclaims under the governing State law.

NDX's briefing does not set out the elements of several of its counterclaims – for breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, and violation of the New Mexico Unfair Practices Act – let alone explain how it has proffered sufficient evidence of each of them to survive summary judgment.  Rather, NDX suggests that its individual counterclaims can be collectively analyzed under the common-law concept of bad faith, and that proof of bad faith is manifest in the failure of Carolina to obtain a favorable settlement:

> NDX alleges that Carolina is liable under its claims for breach of contract, violation of the New Mexico Insurance Code, and breach of the covenant of good faith and fair dealing, for the entire amount of the judgment entered against it as a result of its bad faith failure to settle. . . .

> NDX's counterclaims do not assert either a failure to defend or a failure to indemnify on the part of Carolina. . . . Instead, NDX's claim for bad faith failure to settle . . . asserts that Carolina is liable to NDX for the entire judgment against it as a consequence of Carolina's bad faith failure to settle.

(Doc. 188 at 10, 12).  *See also id.* at 10 ("[a]ll of NDX's claims arise from Carolina's alleged bad faith failure to settle claims made against NDX by Defiant . . . in an underlying lawsuit").

NDX further distinguishes its counterclaim for breach of contract only for the limited purpose of alleging that it provides NDX with another means of recovering the entire excess judgment, including the $2 million in non-covered damages.  NDX states that it "has asserted a claim for breach of contract which alleges that Carolina breached its contract by unreasonably

17

refusing to consent to settlement," which, if proven, would entitle it "to recover all consequential damages flowing from Carolina's breach of contract irrespective of whether Carolina acted in bad faith." *Id.* at 23.  However, NDX does not even set forth the standard for establishing a breach of contract under New Mexico law, let alone identify those aspects of Carolina's conduct that support its contractual claim with citations to the record.  Instead, NDX leaves it to the Court to perform its legal research, examine its exhibits, and arrive at its own conclusions.  This is plainly insufficient to withstand summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (once movant for summary judgment points out absence of evidence supporting nonmovant's position, nonmovant must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" (quotation omitted).

Similarly, NDX states of its claim under the New Mexico Insurance Code only that

[i]f NDX shows Carolina failed to act promptly on communications from NDX regarding settlement or that it failed to did not attempt [sic] in good faith to effectuate a prompt, equitable settlement of the claims against NDX in violation of [the New Mexico Insurance Code], NDX is entitled to an award of actual damages.

*Id*. at 23-24.  NDX then proceeds to argue that its actual damages are $2,000,001, while ignoring its self-described duty to set forth evidence showing how Carolina did not attempt to effectuate a prompt, equitable settlement.  Again, NDX puts the cart before the horse by failing to show the presence of a genuine factual dispute as to the claim at issue and choosing instead to focus on the issue of what its damages would be, had it attempted to meet its burden under Rule 56.

Accordingly, because NDX has not delineated any of its counterclaims or attempted to offer specific factual support showing how a reasonable jury could believe that it has established proof of each of them, the Court finds that summary judgment should be granted to Carolina as

18

to NDX's claims for breach of contract and of the covenant of good faith and fair dealing, breach of fiduciary duty, violation of the New Mexico Unfair Practices Act, and violation of the New Mexico Insurance Code.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Carolina's and Counter-Defendant Monitor's *Motion for Summary Judgment on Count II of the Complaint and on Nanodetex's counterclaims* (Doc. 185)  is **GRANTED**.  Because there is evidence in the record that, pursuant to the Carolina Policy, Carolina was obligated to pay all reasonable and necessary fees, costs and expenses resulting from defending NDX against Defiant's claims, Carolina's liability will be limited to the costs of its defense, plus the $1 in nominal damages awarded to Defiant for tortious interference with business relationships, a claim that was also covered by the Carolina Policy;

**IT IS FURTHER ORDERED** that Defendant/Counter-Claimant NDX's *Opposed Motion to Strike Supplemental Expert Report of Plaintiff/Counter-Defendants' Expert Steven Platt* (Doc. 178) is **DENIED** as moot.

_____

**UNITED STATES DISTRICT JUDGE**

19